The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Our first case this morning is number 19-1704, SynQor, Inc. v. Vicor Corporation. Mr. Horowitz. Thank you, Your Honor, and may it please the Court. Vicor has twice litigated and lost on the key factual question at the center of this appeal, and there is no dispute that if the ordinary rules of issue preclusion were to apply, then the Board's decision would have to be reversed. The only real question is whether there's some categorical exception to the application of issue preclusion in the context of inter-parties reexamination. Well, I'm not sure if that's the only question, because we could have a situation in which there's no categorical rule against it, but it may depend on a case-by-case evaluation of the procedures. You agree that in inter-parties reexamination, there is no opportunity for subpoenas or cross-examination, correct? We do, Your Honor. And, in fact, I think that case-by-case assessment... First of all, I think Vicor doesn't ask for a case-by-case assessment. They ask for a categorical bar. But I think that that goes directly to the point that we make in our reply brief about the comparative assessment of the procedures that's set forth in the restatement. So, and it's true there's no subpoenas, and I'll get to that in a moment, but the assessment we have here... And there's no cross-examination either, right? That's correct. And neither... And here, on this critical frequency issue, you submitted declarations from Mr. Schlecht, who was your CEO, which were relied on both by the Board in the 702 and the 290, and when we affirmed in the 290, we also relied on the Schlecht declaration, and there was no opportunity for cross-examination of Mr. Schlecht in the Board proceedings, right? That's right, Your Honor, and two points on that. So, first, as we see from the restatement, as well as in the chauffeur's training school case, the opportunity for cross-examination is not essential as a general rule, so long as there's some opportunity to present appropriate evidence and argument to meet the positions presented. But second, in this case in particular, and the 290 appeal is really crucial here, even though there wasn't an opportunity for compulsory process in the re-exam itself, Vicor was able to obtain the deposition of Dr. Steigerwald, the key inventor of the key prior art reference, and submitted it, and Vicor's position was that Dr. Steigerwald's testimony was more credible than Dr. Schlecht's. The Board resolved that dispute over credibility, and this Court affirmed as finding it was supported by substantial evidence. What's your answer to the problem that they couldn't cross-examine Schlecht? Two points. Number one, they haven't said that their absence of cross-examination of Schlecht in this case is what matters. So, this is an argument that if it were available, it's been waived, but more importantly, as the chauffeur's training school case makes clear, and as the restatement makes clear, the question is it's a practical assessment of whether that cross-examination was crucial for the resolution of the relevant fact, and they haven't argued that it is, and they met our argument from Dr. Schlecht with their argument from Dr. Steigerwald through his deposition. So, that practical assessment weighs in our favor. They don't disagree. They don't say that they needed this cross-examination in this case. They argue for a categorical rule, and in the chauffeur's training school case, there wasn't cross-examination. There wasn't subpoenas. There wasn't even an oral hearing, and nonetheless... An assessment in the chauffeur's case that cross-examination wasn't necessarily given the nature of the evidence, right? Correct, and in this case, first of all, the nature of the dispute here is the disclosure of prior art references on their face. So, you've got a patent, and you've got printed publications, and the question is whether a person of ordinary skill would look at these references and be able to put them together and reach the claimed invention. We submitted a declaration. They were free to submit their own declaration, just as in the chauffeur's training school case. They were free to submit their own witnesses with their own expertise. Now, VIKR chose instead to submit deposition testimony from Dr. Steigerwald, but they had every opportunity to meet our expert with an expert of their own. They chose not to do so, but the availability of that battle of the experts in this case, or I should say in the prior proceedings, is more than sufficient to render that case fair, to render conclusive resolutions of fact in that case for this one. And again, VIKR has not made any of the arguments about the particulars of this case. VIKR says it is a categorical rule, and if there's no categorical rule, VIKR doesn't have a second-line argument along the lines you've suggested. So if the court were to conclude that if ever reexams can give rise to preclusive findings of fact, then this is such a case. And remember, the restatement says it's an assessment of the comparative procedures and opportunities and incentives available across the two forums. In this case, we're litigating the exact same factual question in the same forum with the same parties, subject to the same rules and procedures, and submitting essentially the same arguments and evidence. At least in this circumstance, there's absolutely no chance, no reason to give VIKR a third opportunity to fight a fight that it lost twice before playing by the same rules. And that's important. It's the playing by the same rules. Even if there wasn't cross-examination in the last case, you might say, well, if there were cross-examination here, then that would make this case sufficiently different to withhold the application of preclusion based on the prior reexam. And maybe that's a reason you'd withhold the application of preclusion in an IPR based on a reexam or in district court based on a reexam. But here, where you're going reexam to reexam, the procedures, opportunities, and incentives were exactly the same. And even if you thought depositions were generally important, in this case, in VIKR's case, because of the parallel district court proceedings, VIKR was able to obtain exactly the kind of evidence that they say is important. They haven't identified any other evidence. They haven't suggested that a cross-examination of Dr. Schlecht would make a difference. What they've done is, for example, point to the PTO's brief in the bio-delivery case, which presented the question whether findings in a reexam can be preclusive in an IPR. But that, again, underscores exactly our point. That's a different question, and it's not presented by this case. This case presents the very narrow question of whether one reexam can ever generate findings that are preclusive in a second. And as to that question, the PTO said nothing. And actually, the PTO's arguments underscore the comparative nature of the inquiry. Another thing about bio-delivery is that the PTO pointed to provisions in the America Invents Act, which the PTO said gave the director discretion to withhold or apply preclusion under the ordinary rules based on a prior reexam proceeding. There's no similar vesting of discretion in the PTO here, under the American Inventors Protection Act of 1999. To the contrary, all we have is an estoppel provision that actually broadens the core common law estoppel and that this court recognizes much in Affinity Labs because Congress wanted to curb abusive reexamination requests. So against the backdrop where Vicor had all the same opportunities, and you have Congress making clear it wants broad estoppel, it makes no sense to withhold the application of the ordinary common law rule. And if there were any question about whether PTO proceedings were sufficiently judicial in nature to give rise to preclusive findings, you can go back to a long time ago in the CCPA. In 1942, the CCPA said they're obviously judicial in character, even in that case when it's an ex parte original examination and the parties sought to be precluded was then in interference proceedings where there were additional protections. Now, I want to pivot with the time I have. If the court were to disagree and conclude that there is a categorical bar on the application of issue preclusion in the context of reexam, we still think that at the very least you would have to vacate and remand in light of the fundamental inconsistency across the various proceedings here. Now, we pointed to six in our brief, but I want to focus on just one here, the 290 patent proceeding. On the same day in May of 2016, the same panel with the same offering judge was asked the same question based largely on the same record and came to two conflicting conclusions on that question and didn't say a word to explain why. Now, Vicor does not defend the inconsistency of those two opinions. The suggestion is that the 2019 opinion provides a new rationale, right? That's correct, but here's the thing. The 2019 opinion only exacerbates the problem. First, as you know from our brief, our position is that the 2019 opinion just talks about Claim 34, which is moot. We can't even appeal the issue on the merits. But even if you were to consider the analysis in the 2019 opinion, it comes up with yet a third conclusion on the same factual question. It doesn't explain why it's an about face from the prior case or prior decision in this case and doesn't explain what's going on with the 290 when the most important thing that happened between 2016 and 2019 on this question is that this court affirmed the 290 patent proceeding finding that substantial evidence supported the patent office's conclusion that you wouldn't combine Steigerwald and Kobos because of frequency and compatibility. The board didn't say a word about that, even though we submitted the decision to them, tried to explain it, they said we couldn't. They didn't say a word about their about face from 2016 in this case, and they certainly didn't say anything about the other six times that they answered the frequency and compatibility issue. So at least on this record, at the very least, you'd have to vacate and remand for an explanation of why the inconsistency, what changed, just as in the Vicor 2017 case. Now, apart from inconsistency and, of course, the preclusion and inconsistency arguments, that applies to all claims on the merits, there's also this issue with respect to the switching regulators for claims 2 through 4. So even if you were to disagree and say that there's no vacater required for the rest of the claims, the board's findings with respect to the claims 2 through 4 really don't hold up. They said all circuits have inductance. Well, I mean, excuse me, not all circuits. They said Steigerwald has inductance, so don't worry about the switching regulators. The truth is all circuits have parasitic natural inductance. Whenever you flow current through a component, you're going to get some inductance from the magnetic fields. But the key point is Steigerwald says don't add inductors. Well, that's exactly what adding a switching regulator would do. The board didn't contend with that. It understood this in 2014 at Appendix 21121 to 22, but then in 2016 and 2019 it seemed to have missed the boat. I see that I'm into my rebuttal, so if there's no further questions, I'd like to reserve the balance of my time. Okay, unless there are further questions, we'll hear from Mr. Smith. Thank you, Your Honor. May it please the Court. This is Nancy Smith for the Appellee By-Call Corporation, and I'd like to talk about the question of issue preclusion first. Why don't you first address the inconsistency between the two May 2 decisions and explain to us why we wouldn't at least have to send that back to have the board reconcile the two decisions? I think it's for exactly the reason that came out in the colloquy with Mr. Horowitz, and that is that the May 16 decision in this case is, in effect, now rendered superfluous by the 2019 case. The 2019 opinion is now the opinion of the agency and incorporates the 2016 opinion but offers additional factual justification for the board's findings, which I think clarify the issue. The original rationale is still there, though, right? The original rationale is still there, but it's reaching the same conclusion as in the 2019 opinion, but it has been added to in a way that I think explains why the board reached the conclusion that it did. Okay. Why don't you go on to collateral estoppel? In the present case, Your Honor, I think that the most analogous Supreme Court precedent that we have is the Astoria case. From the Astoria case, we know that there is no assumption that the rules of preclusion would apply to an administrative agency decision where Congress has evinced some sort of intent to, in effect, regulate the rules of preclusion through the governing statutes or laws. And I think that's pretty clearly the case with interparties reexamination because we have the statutory provisions which provide for statutory estoppels in both civil litigation and in further interparties reexamination proceedings, but also the provision of the Act, AIPA 4607, which regulates how facts are treated in subsequent proceedings. And that particular regulation is a subset of the common law doctrine of issue preclusion in the sense that it only applies to the requester, only applies to civil litigation, and contains an exception that is not found in the common law doctrine of issue preclusion, which is that facts that are later determined to be erroneous based on newly arising information do not have the rule of preclusion attaching to them. And if one were to overlay the common law doctrine of issue preclusion onto AIPA 4607, there would be nothing left of AIPA 4607. So it's really analogous to what the Supreme Court decided. Can I just interrupt you? Yes, Your Honor. Why should we read anything into Congress's extension of issue preclusion to civil actions? Wouldn't it be true that the rule would normally be that an administrative fact-finding wouldn't preclude a district court? So therefore, if Congress wanted it to, then it would have to specifically reach that conclusion, which is what it did. But to me, I don't understand how that says anything about whether it intended to, you know, apply issue preclusion in the administrative proceeding itself. So thank you, Your Honor. So the provision of AIPA 4607, I think Syncor itself is arguing that this is, in effect, a broadening of the application of estoppel. The problem, however, is that that assumes a baseline of no estoppel, right? And I think that's accurate given the picture. No, no, no, no, no. Let me just interrupt you. If that's our argument, I don't agree with that argument either. Let's just ignore that statute. I don't find that statute to be all that helpful either way on the question of whether administrative estoppel should apply to these proceedings. And I know you want to say that Astoria says there's no, you know, presumption, but I thought that at least some courts and B&B hardware have said that issue preclusion is available unless it's evident that Congress doesn't want it. So I don't see how that statutory provision extending estoppel to civil action says anything about whether Congress did or didn't want estoppel to apply in the administrative proceeding itself. So beyond that statutory argument, what argument do you have that we shouldn't apply issue preclusion to the re-exam proceedings? Well, certainly, Your Honor, in the restatement and in the case law framework that has developed around issue preclusion in administrative proceedings, there is a threshold inquiry about whether or not the proceeding is sufficiently adjudicatory. In other words, the common law issue preclusion doctrine is a doctrine of the courts, and it only gets extended to administrative agencies by analogy to civil litigation. And in this case, we have an agency proceeding in inter-parties re-examination that the Supreme Court and staff have characterized as an inquisitorial process, much like ex parte re-examination. And that's really quite accurate. The only difference between ex parte re-examination and inter-parties re-examination and bears on that question is the ability of the third-party requester to provide comments and the ability to appeal to the board. But I want to emphasize that that comment... Well, that underplays it a little bit, doesn't it? It's not just to provide comments. The other party can provide its own prior art. It can provide its own expert testimony about the prior art, you know, to oppose, you know, the other view. So it seems to me that the only key things here missing are what Judge Dyke identified in your friend's argument, which is the ability to cross-examine and the ability to have judicial process, you know, requiring subpoenas and the like. Do you have any case law that says those two things are necessary to find this adjudicative? No, Your Honor. I don't think that there is a case that says those two things are necessary to find it adjudicative. I would, however, point out that even the B&B hardware case pointed out that the availability of cross-examination in TTAB proceedings, which are akin to contested proceedings in the Patent Office, was important to their designation of that as a proceeding to which the rule of preclusion would apply. And certainly the comments in the restatement that we refer to in our brief imply the same thing. So those are certainly very important. Judge, this is Judge Closier. I read B&B processing to say, pardon me, B&B hardware to say that the test when you're asking about the nature of these proceedings is to ask whether the proceedings in the words of the court are fundamentally poor, cursory, or unfair. In your view, does the absence of cross-examination or mandatory process render the inter-parties re-examination process fundamentally poor, cursory, or unfair? In a comparative sense to a proceeding which would offer those protections, certainly it does. There's a limitation on what... What about in comparison to another re-exam? No, in comparison to another re-exam, the same procedures would be in place, of course. I would like to emphasize... Isn't that the question we're being asked? Whether or not we will have preclusion from one re-exam to another? The question you're being asked certainly is whether there's preclusion from one re-exam to another. But the comparative inquiry that CINCOR has advanced in the reply brief is one that I think comes in at the end of the analysis. In other words, there is a threshold question that examines only the nature of the proceeding itself and whether or not that is sufficiently adjudicative. I'm sorry, was there a question? Well, the restatement counsels that you're supposed to be trying to... When you're answering these questions that we're raising, you answer them in the context of the proceeding that's being conducted and what types of issues are trying to be decided. In the patent office setting, it seems to me that you're asking what one ordinary skill in the art would have thought about what references teach and whether to combine them. Those questions aren't being asked to general jury participants in a district court trial case. They're being asked of qualified examiners, board examiners, board members who have skill in the art. Is it necessary that cross-examination is essential to be confident that we have a fair proceeding? Well, certainly, Congress has empowered the patent office to render a decision based on that proceeding itself. I mean, the question of fairness really goes to whether or not... Yeah, and further, Congress has said we must think that these proceedings are sufficiently fair that we're going to allow a fact found in the inter-parties proceeding to bind in a district court. Yeah, that's absolutely true. Yeah, I'm not aware that there's ever been a due process challenge to the fundamental fairness of the proceedings in an inter-parties re-exam. I think that... And our case law has relied on various declarations that have been made in connection with these proceedings over since 1990. We regularly credit the board having credited one declaration over another. That's certainly true, Your Honor, but... The question is not here, is it, whether there's unfairness in both proceedings, the fact that the proceedings are the same under B&B and under the restatement doesn't make for collateral estoppel unless the overall proceeding is fair for the adjudication of the fact in question, right? I think the overall question is that the... In other words, it's an objective standard, not a comparative standard. In the initial step of the analysis, in other words, whether or not the proceeding itself is sufficiently adjudicative, it is an objective standard. I agree with that, Your Honor. If one were to say inter-parties re-examination is sufficiently adjudicative and then step through the factors of restatement 26 and 27, those are the factors that ask whether or not any particular case preclusion should apply, eventually one gets to the comparative analysis at the end, which effectively states that there can be cases where even if an underlying proceeding is sufficiently adjudicative, the follow-on proceeding may offer just sufficiently improved procedure that it wouldn't be fair to apply issue preclusion to the judgment of the original proceeding. And so what we're focused on in the present case is that initial determination whether or not inter-parties re-examination is sufficiently adjudicatory. In other words, is it a sufficiently good analogy to civil litigation that common law issue preclusion should apply? And it's not the case. I mean, there's simply too many differences between civil litigation and inter-parties re-examination to make that analogy really hold. And it's not just the ability to cross-examine witnesses and the ability to serve process. There's also the issue that there's no rules of evidence that apply. The ability of the requester to submit comments, I'm using the statutory language there, but you're correct. But there's no question that the initial findings, say, for example, the first decision, which is being used to preclude a later decision, there's no question that that first proceeding wasn't fair, Justin, that the result wasn't correct. It was sufficient to bind the parties in the first one. Correct? Yes. In the abstract, I agree with that. You have a second proceeding with the same party. It's the same issue. What issue preclusion is trying to do is to prevent a second bite at the apple for the same party on the same issue the second time around. Let me just clarify the procedural oddity of this particular constellation of cases, Your Honor. This is actually the first filed re-examination. It's not a sort of second bite at the apple. It's on a different patent than the other patents. These are proceedings that were started more or less in parallel. It's just happenstance that this one happens to be arriving at a judgment later. So, to the extent that that influences the analysis at all, that's not the sort of serial re-examination case that Congress is intending to protect against. And I think that's probably why there's no specific regulation for this in the statutes, even though the statutes do, I think, under Astoria, evince and intend to regulate the application of preclusion rules to the inter-parties re-examination frame. Against an assumption that I think was borne out in the case law, there is no case that CINCOR has cited that actually applies an issue preclusion type rule from a re-examination in 40-year history of re-examination. Thank you, Your Honor. Okay, thank you. Mr. Horowitz, you have a couple minutes. Mr. Horowitz? Apologies. Sorry, I was on mute. My apologies. Thank you, Your Honor. A couple points. First, on the statute briefly, Congress certainly thought it was doing something remarkable in expanding preclusion to the district court setting because it enacted with that provision a severability clause recognizing the potential constitutional concerns, Seventh Amendment concerns due to the differences in procedures. So, I think it's pretty clear that they were taking a step beyond what they thought would otherwise apply. Now, on the process where I want to focus… But they didn't just say that there's preclusion. They said there's preclusion unless there's new evidence, right? As to civil actions, they didn't say that about administrative preclusion. The point is when they were expanding the core preclusion of the administrative rule to the district court setting, they said, we're not going to go all the way. We're going to have an exception in light of the fairness issues. But I want to turn to process, if I may, with my last couple minutes to say, you heard VICOR doesn't have a single case saying that cross-examination is essential. We, of course, have cases… Well, you don't have a case that says the opposite either. We do. We do. Wait, wait, wait. Except the Chauffeur case is the only one, and that says in the particular circumstances their cross-examination wasn't essential. That's the only case you have, right? That is correct, and that goes straight to the restatement, which says it's not essential either, unless it's necessary. Again, given the comparison, and that's where I want to end, is this point about the comparison. VICOR suggests by setting the provisions in the restatement sections 20-what-have-you-3, I think, that this is the last concern. But you have to remember, all of those sections are about general preclusion. The part of the restatement that addresses administrative preclusion is the sort of special section. It's Chapter 6, and Chapter 6 starts with the introductory note about how comparison fits in. And it says the very first consideration is procedural, and it says the essential issue is a comparison of the quality and intensiveness of the opportunity to litigate, etc. So you mean that you have issue preclusion as long as both proceedings have an unfair process? No, Your Honor. I still think that the primary aspects of Restatement 83-2, in terms of notice, opportunity to be heard, and submit evidence, that all has to be met. And it is met here, and again, VICOR doesn't dispute that any of the essential elements of adjudication set forth in 83-2A, B, C, and D are met. Then as to E, such other procedural elements as may be required for the particular case. There may be circumstances where it's important to have cross-examination, but this isn't one of them. Now, I'll just close by saying that the Supreme Court has made clear in the Astoria case that VICOR cites, that a losing litigant deserves no rematch after a defeat fairly suffered. VICOR lost twice before on the key frequency incompatibility issue in the same forum, playing by the same rules. We respectfully submit that those prior findings are preclusive, and that the decision below should be reversed. Thank you, Your Honor. Okay, thank you. No further questions. Does anybody have any further questions? No. Okay, thank you, Mr. Horowitz. Thank you, Mr. Smith. The case is submitted.